# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

CLAUDIA BENNETT,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        Case No.  CV406-203
                                    )
CHATHAM COUNTY SHERIFF'S            )
DEPARTMENT, THOMAS GILBERG,         )
ROBERT LAMB, ROBERT BROOKS,         )
EDWARD SALMON, HOWARD L.            )
HARN, MCARTHUR HOLMES, and          )
AL ST. LAWRENCE,                    )
                                    )
        Defendants.                 )

## REPORT AND RECOMMENDATION

Plaintiff filed this employment discrimination action on August 14,

2006, alleging that the defendants discriminated against her based upon

her race and sex in violation of 42 U.S.C. § 1983; Title VII of the Civil

Rights Act, 42 U.S.C. § 2000e et seq.; and the First and Fourteenth

Amendments to the Constitution.  (Doc. 5.)  She further alleges that she

was retaliated against for filing an employment grievance and an EEOC

complaint.    (Id.)    Denying liability, defendants move for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

(Doc. 18.)  For the reasons that follow, defendants' motion should be **GRANTED** and this case should be **DISMISSED**.

## I.    BACKGROUND

Plaintiff, a black female, was hired as a deputy corrections officer with the Chatham County Sheriff's Department in August of 1992.  (Doc. 28 at 2.)  In October of 1993 she was promoted to sheriff's deputy by Sheriff Al St. Lawrence.  (Id.)  She holds the rank of  advanced private. (Doc. 18 at 2.)  In March of 2005 she passed the corporal examination, placing her on the eligibility list for a promotion to corporal.  (Doc. 28 at 2.)    She raises several claims of employment discrimination and retaliation arising from two incidents.

The first incident arose from plaintiff's August 2004 purchase of a Dell computer.  (Doc. 40 at 2.)  The computer was billed to the Chatham County Sheriff's Department.    (Id.)    In April 2005, plaintiff was suspended for three days without pay for "failing to make necessary arrangements to satisfy" the invoice from Dell.  (Id.; Doc. 28 at 2; Doc. 18 at 3.)  She alleges that Major Howard L. Harn falsely charged her with

misconduct and that she was actually suspended because of her race and sex. (Doc. 5 at 5.)

The second incident occurred on September 13, 2005, when plaintiff was involved in an altercation with an inmate. (Doc. 18 at 3; Doc. 28 at 3.) She was working alone on the ground floor of Unit 1-B when she ordered inmate Mark Prestenback to return to his cell on the second floor. (Doc. 18 at 3; Doc. 28 at 3.) Prestenback called her a "fat bitch" but went to his cell. (Doc. 19 at 14.) She later opened Prestenback's cell to allow his roommate to get his cup for dinner. (Id.) Prestenback left the cell and refused to return per plaintiff's instructions. (Id.) She returned to the first floor. (Id. at 15.) The inmate followed and made several derogatory and threatening remarks. (Id.) Plaintiff told Prestenback "only cowards and faggots act like that." (Id.) After plaintiff's remark, Prestenback returned to his cell and retrieved his sneakers. (Doc. 21 at 85-6.) Plaintiff testified that when an inmate retrieves his sneakers, it indicates that he is ready to fight. (Id.) Accordingly, she called for emergency assistance from the phone at her desk. (Doc. 28 at 3.)

Private Glen Williams and Officer Tony Farmer promptly arrived in response to plaintiff's call. (Doc. 28 at 3; Doc. 18 at 4.) Williams ordered Prestenback to come downstairs, but he refused to comply. (Doc. 18 at 4.) Williams then went upstairs to restrain Prestenback. (Doc. 18 at 4.) When he reached the top of the stairs, Prestenback struck him in the head. (Doc. 28 at 3.) Plaintiff and Farmer arrived upstairs as Williams and Prestenback scuffled. (Id.; Doc. 18 at 4.) Once Prestenback was restrained, Williams struck him several times. (Doc. 18 at 3; Doc. 28 at 4.) Defendants allege that plaintiff also kicked Prestenback in violation of department policy. (Doc. 18 at 3.) Plaintiff contends, however, that she did not strike the inmate. (Doc. 21 at 94.)

The fracas had many disciplinary and administrative repercussions. Plaintiff and the other officers involved were required to prepare incident reports describing the encounter in detail. Sergeant Brooks and Lieutenant Lamb ordered plaintiff to submit four written statements in addition to her initial incident report concerning the attack, while male officers were required to submit, at most, two statements. (Doc. 28 at 5.) She claims they ordered her to write the extra statements for discriminatory reasons.

Plaintiff's ankle was injured during the scuffle. (Doc. 19 at 17.) On September 21, 2005, plaintiff visited a doctor where she received treatment for the injury. (Doc. 28 at 5.) She claims that she gave her supervisor notice that she would arrive late to work, but she was still reprimanded by Sergeant Brooks for her late arrival. (Id. at 6.) Believing that she was being discriminated against on the basis of race and sex, she filed a grievance against Sergeant Brooks with Captain Gilberg. (Id.)

On September 28, 2005, Lieutenant Lamb charged plaintiff with violating Sheriff's Department policies concerning general conduct, use of force, and incident reporting, as well as violating the Corrections Bureau's use of force policy. (Id.) He recommended that she be suspended for at least three days and that a copy of the report be placed in her employment file. (Id.) Plaintiff denied the charges. (Id. at 7.) After concluding that plaintiff had violated the policies as alleged, Major Harn suspended her employment for one week and placed a copy of the suspension notice in her permanent work file. (Id.; Doc. 18 at 4.) She alleges that she was disciplined in retaliation for filing her grievance against Sergeant Brooks. (Doc. 10 at 6.) Additionally, Private Williams

was only charged with violating department policies concerning general conduct and use of force. (Doc. 28 at 7.) He received an unfavorable report, but it was only kept in his employment file for a period of twelve months to stand as a letter of reprimand. (Id. at 8.) As both plaintiff and Williams are black, she alleges that she was treated differently from Williams because of her sex.

On December 5, 2005, plaintiff filed an EEOC complaint against the Chatham County Sheriff's Department alleging employment discrimination based upon sex and race. (Id.) On January 4, 2007, she filed a second EEOC complaint against the Department alleging retaliation and discrimination for being denied promotion to one of several vacant corporal positions.[1] (Doc. 18 at 5.)

## II.  LEGAL PRINCIPLES

### A.   Summary Judgment

---

[1.] Plaintiff's response to defendants' motion for summary judgment states that the second EEOC complaint was filed on August 14, 2006. (Doc. 28 at 8.) She filed the instant lawsuit on that date. (Doc. 1.) The second EEOC complaint, however, was clearly filed on January 4, 2007. (Doc. 17 Ex. E-24.) It appears that plaintiff mistakenly attributed the date she filed suit in this Court to her second EEOC complaint.

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to enter summary judgment where the record, taken as a whole, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it might affect the outcome of the case under the governing law. . . . It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1518 (11th Cir. 1990) (citations omitted).

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of her claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific

facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for trial." Tidmore v. BP Oil Co./Gulf Prods. Div., 932 F.2d 1384, 1387 (11th Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). The Court must consider the entire record in the case, not just those portions of the record which have been singled out for attention by the parties. Baker, 903 F.2d at 1519.

## B.   Title VII and § 1983 Claims

Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also

prohibits employers from discriminating against employees in retaliation for their opposition to any unlawful employment practice of the employer or in retaliation for making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). Section 1983 and Title VII claims are analyzed under the same legal framework. Underwood v. Perry County Comm'n, 431 F.3d 788, 793 (11th Cir. 2005).

A plaintiff alleging discrimination under Title VII must show that the employer intended to discriminate against her because of her membership in a particular protected group. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."). Where, as here, a plaintiff produces no direct or statistical evidence of discrimination, she must rely on circumstantial evidence from which an inference of intentional discrimination may be drawn. Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1313 (11th Cir. 1994). In such a case, the plaintiff bears the initial burden of establishing a

prima facie case of discrimination. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>Denney v. City of Albany</u>, 247 F.3d 1172, 1183 (11th Cir. 2001); <u>Mora v. Univ. of Miami</u>, 15 F. Supp. 2d 1324, 1333 (S.D. Fla. 1998).

Under a common formulation of the <u>McDonnell Douglas</u> framework, to establish a prima facie case of discrimination, a plaintiff must show: "(1) that she belongs to a protected class; (2) that she suffered an adverse employment action; (3) that she and a similarly situated non-protected person were dissimilarly treated; and (4) that the employment action was causally related to the protected status." <u>Alford v. Florida</u>, 390 F. Supp. 2d 1236, 1247 (S.D. Fla. 2005); <u>Perkins v. School Bd.</u>, 902 F. Supp. 1503, 1506-7 (M.D. Fla. 1995). In that respect,

> [e]vidence that similarly situated employees are disciplined more leniently is admissible to support a disparate treatment claim when the plaintiff has established that the co-employees are in fact similarly situated. Thus, the plaintiff must show that the comparator employees are "involved in or accused of the same or similar conduct" yet are disciplined in a different, more favorable manner.

<u>Anderson v. WBMG-42</u>, 253 F.3d 561, 564 (11th Cir. 2001) (citations omitted).

In cases where retaliation is alleged, the formulation of the prima facie case is altered slightly. A plaintiff need only show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. Shannon v. BellSouth Telecomms., 292 F.3d 712, 715 (11th Cir. 2002); Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000) (citing Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997).

If the plaintiff succeeds in proving a prima facie case of discrimination or retaliation, she has established a presumption of unlawful conduct. Burdine, 450 U.S. at 253-54 ("The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for plaintiff's rejection."). The defendants then have the burden of producing a legitimate, nondiscriminatory reason for the challenged employment action. See id. at 254 (emphasizing that defendants' burden is one of production: "The defendant[s] need not persuade the court that it was actually motivated by the proffered reasons"). If a legitimate, nondiscriminatory reason is articulated by the defendants, the plaintiff then has the ultimate burden

of proving the reason to be a pretext for unlawful discrimination.  Id. at

256.

## III.  ANALYSIS

Plaintiff's complaint details several discreet events allegedly giving

rise to multiple claims of discrimination and retaliation under § 1983,

Title VII, and the Constitution.  The Court will address the claims in the

order that the events transpired.[2]

---

[2.] Before turning to the individual claims of discrimination, the Court notes that certain claims are subject to immediate dismissal.

As defendants point out, plaintiff's Title VII claims against them in their individual capacity are improper.  (Doc. 18 at 6.)  Plaintiff concedes this point.  (Doc. 28 at 14.)  Accordingly, the defendants should be **DISMISSED** to the extent that they are sued in their individual capacity under Title VII.  See Busby v. City of Orlando, 931 F.2d 764, 762 (11th Cir. 1991).

Additionally, § 1983 damages suits against defendants in their official capacity under are barred by Eleventh Amendment sovereign immunity.  (Doc. 18 at 6.)  "[S]uits against an official in his or her official capacity are suits against the entity the individual represents."  Parker v. Williams, 862 F.2d 1471, 1476 n.4 (11th Cir. 1989).  The question, for purposes of § 1983 liability, of whether an official acts on behalf of the state or county is a question of state law.  The Northern District of Georgia has thoroughly examined the issue and determined that sheriffs and their officers are not a division or subunit of the county in which they reside or of that county's governing body under the Georgia Constitution and Georgia State Code.  Redding v. Tuggle, No. 105cv2899, 2006 WL 2166726, at *7-8 (July 31, 2006); see Bd. of Comm'rs of Randolph County v. Wilson, 396 S.E.2d 903, 903-04 (Ga. 1990) ("The sheriff . . . is an elected, constitutional officer; he is subject to the charge of the General Assembly and is not an employee of the county commission."); Manders v. Lee, 388 F.3d 1304, 1347 (holding that in the context of establishing use-of-force policy and training and disciplining deputies, a sheriff is an "arm of the state").  Though the Court hesitates to hold that sheriffs and their employees always act as arms of the state, it is clear that in the context of employment decisions sheriffs and their employees are state officers.  O.C.G.A. § 15-16-23 (sheriff's

12

## A. Suspension for Billing Personal Dell Computer to Sheriff's Office

In April of 2005, plaintiff was suspended for three days without pay for billing a computer purchased for private use to the Sheriff's Department. (Doc. 40 at 2.) Plaintiff argues that the suspension was racially and sexually motivated. (Id.) Her claim, however, is time-barred, as she did not file an EEOC complaint within 180 days of the alleged unlawful incident. 42 U.S.C. § 2000e-(5)(e)(1).[3] See Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1435 (11th Cir. 1998) (noting that an employee could not use time-barred evidence of allegedly discriminatory practices to establish prima facie case of discrimination) (citing Del. State Coll. v. Ricks, 449 U.S. 250, 256-58 (1980) (holding that because the only alleged discrimination occurred, and the filing

---

offices are independent of the county in which they are located with respect to employment decisions and actions); see Wilson, 396 S.E. 2d at 905 ("the board of commissioners cannot discharge the sheriff's deputies"). The Eleventh Amendment prohibits damages suit against state officials acting in their official capacities. Kentucky v. Graham, 473 U.S. 159, 166-67 (1985). Accordingly, the defendants should be **DISMISSED** to the extent that they are sued in their official capacity under § 1983.

[3.] Plaintiff appears to argue that because this suspension was raised to show a continuing pattern of harassment based on race and sex, it is actionable under the rule in Buzzi v. Gomez, 62 F. Supp. 2d 1344, 1352 (S.D. Fla. 1999). However, Buzzi clearly states that such conduct must occur *subsequent* to the filing of an EEOC charge.

limitation period therefore commenced, when plaintiff was denied tenure, the EEOC charge was untimely when filed at the time plaintiff eventually lost his teaching position one year later)).

To the extent that this claim is raised under the Equal Protection Clause pursuant to 42 U.S.C. § 1983, plaintiff cannot make out a prima facie case. She does not provide any evidence showing that a similarly situated non-protected person received different treatment. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Holifield, 115 F.3d at 1562 (citing Williams v. Ford Motor Co., 14 F.3d 1305, 1309 (8th Cir. 1994); see Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir. 1998), modified by 151 F.3d 1321 (11th Cir. 1998). *"If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present."* Holifield, 115 F3.d at 1562 (citations omitted) (emphasis in original); Alford, 390 F. Supp. 2d at 1247. Accordingly, this claim is appropriately disposed of on summary judgment.

**B.    Claims Arising from the Prestenback Encounter**

  i. *Multiple Incident Reports*

Plaintiff contends that she was discriminated against because she was forced to write five separate incident reports regarding the Prestenback encounter, while the male deputies involved only had to prepare, at most, two each.  (Doc. 27 at 8.)  Plaintiff, however, cannot make out a prima facie case of discrimination, as she cannot show that writing multiple incident reports qualifies as an adverse employment action.  See Alford, 390 F. Supp. 2d at 1247-49 (absent an allegation that plaintiff suffered some adverse consequence giving rise to a change in employment status, the challenged conduct simply does not give rise to a claim of retaliation or discrimination in violation of Title VII or § 1983).  Accordingly, this claim should not survive summary judgment.

  ii. *Reprimand for Late Arrival*

On September 21, 2005, plaintiff reported late to work after visiting a doctor who treated her for injuries sustained during the Prestenback encounter.   (Doc. 5 at 7.)   She called in to notify her supervisor that she would not be in on time, but she still received a reprimand from Sergeant Brooks for her late arrival.  (Doc. 40 at 7.)  She

alleges that she was reprimanded for discriminatory reasons. (Doc. 5 at 7.) Defendants argue, and the Court agrees, that plaintiff presents no evidence showing that other similarly situated non-protected employees had been treated differently. Holifield, 115 F.3d at 1562.

Plaintiff alleges in her deposition that she had asked others if they had ever received a memo of counseling for calling in late, and they responded that they had not. (Doc. 21 at 126.) Plaintiff, however, called in late on the morning of a doctor's appointment that *she knew of for days before it was to occur.* (Doc. 21 Ex. 45.) As she failed to establish that anyone had called in late under similar circumstances, her comparators are not similarly situated for purposes of establishing a prima facie claim. WBMG-42, 253 F.3d at 564 ("the plaintiff must show that the comparator employees are 'involved in or accused of the same or similar conduct' yet are disciplined in a different, more favorable manner"); Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions. . . ."). As she fails to bring forward any specific

facts showing a genuine issue for trial, this claim is properly dismissed under Rule 56. <u>Celotex Corp.</u>, 477 U.S. at 323.

### iii. *Retaliation and Discrimination for Filing a Grievance*

Plaintiff alleges that defendants Gilberg, Lamb, and Harn (and possibly St. Lawrence and Holmes) placed an adverse Personnel Conduct Report (PCR) in her file in retaliation for her filing of a grievance. (Doc. 10 at 4.) She also claims that Harn, Holmes and St. Lawrence suspended her employment for discriminatory and retaliatory reasons after the Prestenback encounter. (<u>Id.</u> at 5.)

### a. <u>Retaliation</u>

Assuming that plaintiff can make out a prima facie case of retaliation on these facts (which defendants dispute), plaintiff's claim still fails. The defendants have asserted three legitimate nondiscriminatory reasons for placing the PCR in her file and for suspending her employment, but plaintiff brings forward no evidence of pretext.

To establish a legitimate nondiscriminatory reason for their actions, defendants first contend that their investigation indicated that plaintiff had precipitated the Prestenbeck encounter. (Gilberg Aff. 8 at ¶

25; Lamb Aff. 5 at ¶ 13.) Their second contention is that there was evidence from Lieutenant Salmon that plaintiff had kicked Prestenback two or three times in violation of several Sheriff's Department and Corrections Bureau policies. (Salmon Aff. 3 at ¶¶ 7, 9.) Finally, they contend that her incident reports were not entirely honest. Plaintiff, even upon submitting her fifth incident report, failed to mention that *anybody* had struck Mr. Prestenback after he had been restrained, including Williams. (Gilberg. Aff. 7-8.) Williams admitted to punching Prestenback because he had lost his temper when the inmate struck him. (Gilberg Aff. 8 at ¶ 25.)

Plaintiff, however, insists that her allegedly incomplete incident reports were based on her recollections at the time they were prepared. (Doc. 40 at 4.) She also contests Lieutenant Salmon's reports of her striking the inmate. (Doc. 40 at 4; Doc. 21 at 98.)

Generally, "[t]hree types of evidence can be used to prove pretext: 1) comparative evidence; 2) statistical evidence; and 3) direct evidence of discrimination." Miles v. M.N.C. Corp., 750 F.2d 867, 870 (11th Cir. 1985). Plaintiff relies upon comparative evidence, as she contends that she was disciplined more harshly than Private Williams for similar

conduct. (Doc. 28 at 16; Doc. 5 at 8.) Williams, a black male, was issued an unfavorable PCR for the encounter that was to remain in his file for twelve months as a letter of reprimand. (Harn Aff. 13 at ¶ 34; Doc. 28 at 8.) Plaintiff, a black female, had an unfavorable PCR placed in her permanent employment file, and she was suspended from her employment for a week. (Doc. 5 at 7.)

Williams, however, is not a good comparator. Plaintiff does not dispute that she acted to precipitate the incident. She admits that before the incident, she told Prestenback that he acted like a "coward[]" and a "faggot[]." (Doc. 21 at 139.) Williams, on the other hand, merely responded to a situation that he had no part in creating. Though plaintiff contends that Williams provoked the inmate to fight him by stating "I'll teach you not to charge me," the comment was made after Prestenback had struck Williams in the head. (Doc. 28 at 16.) In fact, the comment was made much later in the encounter. In Corporal Milton's incident report, he states that Williams taunted the inmate only after leg-irons were attached to Prestenback's legs. (Doc. 40 Ex. Q). Accordingly, the Court is of the opinion that any further provocation of

the inmate by Williams is clearly distinguishable from plaintiff's incitement of the incident.

The conduct underlying the two disciplinary actions was significantly different. As plaintiff has not raised any facts demonstrating "weaknesses, implausibilities, inconsistencies, or incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable fact finder could find them unworthy of credence," her claim fails and summary judgment is appropriate. See Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004).

To the extent plaintiff contends the defendants retaliated against her for exercising her First Amendment rights, her claim fails as a matter of law. A court must undertake a four-stage analysis to establish a First Amendment public employee retaliation claim under 42 U.S.C. § 1983. The court first must decide, as a matter of law, (1) whether the speech in question can "be fairly characterized as constituting speech on a matter of public concern." Connick v. Myers, 461 U.S. 138, 146 (1983). It must also ask "whether the employee spoke *as a citizen* on a matter of public concern." Battle v. Bd. of Regents, 468 F.3d 755, 760 (11th Cir.

2006) (emphasis added) (quoting <u>Garcetti v. Ceballos</u>, 126 S.Ct. 1951, 1958 (2006)).  If the speech involves a matter of public concern spoken by a citizen, the court must ask (2) whether "the interests of the [public employee], as a citizen, in commenting upon matters of public concern" outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563, 568 (1968).  If the court finds that the speech was protected, it must determine (3) whether the protected speech was a "'substantial factor' – or, to put it in other words, that it was a 'motivating factor' in the . . . [adverse employment] decision." <u>Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977).  Finally, the court must determine (4) whether, in the absence of the protected speech, the government-employer "would have reached the same decision." <u>Id.</u>

In determining whether speech is of public concern, the court must determine the purpose for which plaintiff filed the grievance.  <u>Henry v. City of Tallahassee</u>, 149 F. Supp. 2d 1324, 1330 (N.D. Fla. 2001); <u>Badia v. City of Miami</u>, 133 F.3d 1443, 1445 (11th Cir. 1998) ("Generally, such speech which exposes personally suffered discrimination for personal

benefit is not entitled to First Amendment protection."). All of plaintiff's desired relief revolves around compensation and employment benefits. (Doc. 5 at 9-10.) Consequently, it appears that she filed her grievance, as well as this suit, for personal reasons. She brings forward no evidence or allegations to contradict this determination. Her grievance is thus not a matter of public concern, and it therefore receives no First Amendment protection. Accordingly, this claim should be dismissed.

### b. Discrimination

To the extent plaintiff raises a non-retaliatory claim of sexual or racial discrimination against defendants, she cannot make out a prima facie case. For the reasons discussed above, she failed to create a fact issue as to whether a similarly situated employee outside of the protected class was treated differently. Williams cannot be said to have been similarly situated, as he is not believed to have precipitated the incident. Accordingly, summary judgment is appropriate on this claim.

### iv. *Discriminatory Treatment by Lieutenant Salmon*

Plaintiff alleges that Lieutenant Salmon "falsely and discriminatorily reported to defendants Lamb and Gilberg that plaintiff punched and kicked Mr. Prestenback." (Doc. 5 at 8.) Plaintiff cannot

establish a prima facie case of discrimination against Lieutenant Salmon because she does not allege that a similarly situated non-protected person was treated differently. Williams was not treated differently; Salmon reported that he observed both plaintiff and Private Williams striking the inmate. (Salmon Aff. 3 ¶ 3.)

## C. Failure to Promote Claims

Plaintiff alleges that she was denied promotion to corporal for sexually discriminatory reasons. (Doc. 1 at 5.) Additionally, she claims that she was denied promotion in retaliation for filing a grievance alleging racial discrimination and an EEOC complaint alleging racial and sexual discrimination. (Doc. 5 at 5.)

### i. *Plaintiff's non-retaliation Title VII claims are barred*

Prior to filing a lawsuit for an alleged violation of Title VII, a plaintiff must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1). A "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Alexander v. Fulton County, 207 F.3d 1303, 1332 (11th Cir. 2000).

Plaintiff contends that she was passed over for promotion in 2006. (Doc. 5 at 5.) Plaintiff's first EEOC complaint made no reference to these claims, as it was filed on December 7, 2005, the year before they accrued. (Doc. 17 Ex. E-18.) As "[a]llegations of new acts of discrimination are inappropriate," plaintiff cannot bring her failure to promote claims in this litigation. Gregory v. Georgia Dep't of Human Res., 355 F.3d 1277, 1279-80 (11th Cir. 2004). Accordingly, these claims should be dismissed as unexhausted.

Plaintiff argues that her filing of a second EEOC complaint cures this deficiency. (Doc. 28 at 13.) She filed the second complaint on January 4, 2007 and included her failure to promote claims. (Doc. 17 Ex. E-24.) Plaintiff, however, has not shown the Court that she has received a right-to-sue letter regarding this complaint. An action brought pursuant to Title VII must be filed within 90 days of the receipt of the EEOC's right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1); Stallworth v. Wells Fargo Armored Serv. Corp., 936 F.2d 522, 524 (11th Cir. 1991). Without the letter, plaintiff's claims under the second EEOC complaint are premature and should be dismissed.

ii.    *Failure to Promote Claims brought pursuant to 1983 or Couched as Claims of Retaliation under Title VII*[4]

Defendants concede that plaintiff has established a prima facie case of retaliation as to the promotions of Sheppard,[5] Strickland, Caruthers, Parker, Warren, Fisher, and Lowe.  (Doc. 18 at 28.)  As to the § 1983 discrimination claims, the Court will presume that plaintiff has established a prima facie case, though it is not conceded by defendants. Accordingly, the burden shifts to the defendants to offer a legitimate, nondiscriminatory reason for promoting those officers.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  If such a nondiscriminatory reason is shown, the burden shifts back to plaintiff to show that the reason proffered is a mere pretext.  <u>Id.</u> at 803.

---

[4.] Defendants contend that this retaliation claim is outside the scope of the initial EEOC complaint and is therefore barred.  (Doc. 18 at 4.)  Though "[i]t is well settled that administrative remedies must be exhausted before an employee may pursue a Title VII employment discrimination claim in federal court," claims alleging retaliation for the filing of an EEOC charge are deemed within the scope of the original filing.  <u>Buzzi</u>, 62 F. Supp. 2d at 1351-52.  Accordingly, these claims are properly before the Court.

Additionally, to the extent the claims are raised under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, they do not require administrative exhaustion.  Accordingly, the Court will analyze each promotion listed in plaintiff's amended complaint (Doc. 5 at 5) and Joint Status Report (Doc. 10 at 5-7).

[5.] As to Sheppard, defendants contend that his promotion occurred on October 16, 2005, before plaintiff filed her first EEOC complaint in December of 2005.  (Doc. 18 at 28.)  However, she filed a grievance on September 23, 2005, before the promotion.  (Doc. 40 at 7.)  Accordingly, the claim is properly before the Court.

Defendants argue that plaintiff simply was not the best candidate for the position. (Doc. 18 at 29-37; see Doc. 17 Exs. C, D, E, F, and H.) She had a disciplinary action in her file relating to the computer incident, she had a memo of counseling for failing to call in advance when she knew she would be out for medical appointments, she had not been a field training officer, she took 76 sick hours in 2004, and she took 196 sick hours in 2005. (Doc. 18 at 30.)

In comparison, defendants point to the strengths of the candidates that were actually promoted. They claim that Private Sheppard had an excellent attendance history, was a field training officer, had no disciplinary actions, and had been an officer-of-the-month. (Doc. 18 at 29.) Private Strickland had an excellent attendance history, worked extremely well with others, was a self-motivator, motivated others, had outstanding evaluations, and had served as a field training officer. (Id. at 31-32.) Though Strickland had two disciplinary actions in his file, the actions did not involve issues of truthfulness or of violence towards an inmate. (Id. at 32.) Private Caruthers had an excellent attendance history, his evaluations showed a good work performance history, and he had no disciplinary actions in his file. (Id. at 33.) Private Parker had

extensive experience in all areas of operations, such as training, receiving and discharge, transport, linear supervision and direct supervision of housing units. (Id. at 34-35.) He is a state certified trainer and he is certified in C.P.R., defensive tactics, and firearms. (Id.) He had an outstanding attendance history, was very dependable, and had no disciplinary actions. (Id. at 35.) He was also an officer-of-the-month, officer-of-the-year, and a field training officer. (Id.) Private Warren was promoted because he was extremely dependable and self-motivated, regularly volunteered when the jail was short staffed, had no disciplinary actions on his record, and was selected as officer-of-the-month. (Id.) Private Fisher had an excellent attendance history, was selected as an officer-of-the-month, had no disciplinary actions on his record, and regularly took on the corporal's responsibilities when the corporal was out. (Id. at 36.) Private Moye likewise had an excellent attendance history, was selected as officer-of-the-month, had no disciplinary actions on his record, and took no sick hours in 2005. (Id. at 36-37.) Finally, Private Lowe had an excellent attendance history, was selected as officer-of-the month and officer-of-the-year, had no disciplinary actions, took

few sick days, and was recommended to receive a commendation in 2004. (Id. at 34.)

As the defendants have provided legitimate nondiscriminatory reasons for the promotions, the burden shifts back to plaintiff to show that the reasons are pretextual. Plaintiff attempts to show discrimination using the comparators discussed above, but she provides no factual support to show that she was denied promotion based on any illegal motive. (See Doc. 28 at 18-21.) She disputes the reasons given as to each promotion, but her assertions are groundless. She states that Colonel Holmes told Private Lowe she was promoted because she passed the corporal test (Id. at 18), but this is a blatant mischaracterization of Corporal Lowe's deposition testimony.[6] Lowe stated at her deposition that Colonel Holmes did not "go into details" in explaining why she was selected. (Doc. 31 at 14.) Gilberg told Private Sheppard that he was promoted for doing a good job, and no reasons were provided regarding the other officers promoted to corporal. (Id. at 18, 19.) Plaintiff

---

[6.] The deposition testimony plaintiff relies upon is as follows:
        Q      Okay. Colonel Holmes told you you were on the promotion list?
        A      Yeah, I passed the test and they were promoting some people –
   (Doc. 31 at 12.)

concludes that these statements, or lack thereof, are somehow in conflict with the legitimate nondiscriminatory reasons provided above. (Id.) No reasonable fact-finder could find that these alleged conflicts make the legitimate nondiscriminatory reasons provided above unworthy of credence. Cooper, 390 F.3d at 725-26. At most, they show that the corporals deposed were not apprised of the reasons for their promotions.

Finally, though plaintiff may have served longer than some of those promoted to corporal, such a disparity in qualifications, standing alone, is legally insufficient to establish pretext. Denney, 247 F.3d at 1187; Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253-54 (11th Cir. 2000) (quoting Deines v. Tex. Dep't of Protective and Regulatory Servs., 164 F.3d 277, 280 (5th Cir. 1999)) ("[A] plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted . . . . '[D]isparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face.'"). Accordingly, without any evidence indicating that she was passed over for promotion based upon her race or sex, these claims are properly disposed of on a motion summary judgment.

## IV.   CONCLUSION

For all of the reasons explained above, defendants' motion for summary judgment should be **GRANTED**, and this case should be **DISMISSED**.

**SO REPORTED AND RECOMMENDED** this _13 ͭ ͪ_ day of February, 2008.

_____
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**